10%054 Leo 5 July 23

JUL 05 2023

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                                    FOURTH JUDICIAL DISTRICT

Celeste Smith,                          Case Type: Employment

    Plaintiff,

vs.
                                    **SUMMONS**

U.S. Bank National Association, Inc.,

    Defendant.

                                    Court File No. _____

**TO: DEFENDANT ABOVE-NAMED:**

      1. **YOU ARE BEING SUED.** Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

      2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this summons. You must send a copy of your Answer to the person who signed this summons located at:

1625 Medical Arts Building<br>825 Nicollet Mall<br>Minneapolis, MN 55402

      3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

      4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: July 3, 2023

FABIAN MAY & ANDERSON, PLLP

/s/ *Nicholas G. B. May*
Nicholas G. B. May, #0287106
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: (612) 353-3340
nmay@fmalawyers.com

**ATTORNEY FOR PLAINTIFF
CELESTE SMITH**

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Celeste Smith,

    Plaintiff,

vs.

U.S. Bank National Association, Inc.,

    Defendant.

Case Type: Employment

**COMPLAINT**
**Jury Trial Demanded**

Court File No. _____

Plaintiff, by her attorneys Fabian May & Anderson, PLLP, brings this action for damages for Defendant's violations of the Minnesota Human Rights Act ("MHRA"). Plaintiff states the following as her claims against Defendant:

## PARTIES

1. Plaintiff Celeste Smith is an individual who resides in the City of Cottage Grove, County of Washington, State of Minnesota.

2. Defendant U.S. Bank National Association, Inc. ("Defendant" or "U.S. Bank") is a nationally chartered banking institution with executive offices located at 800 Nicollet Mall, Minneapolis, Minnesota, 55402.

## FACTUAL ALLEGATIONS

3. Smith has been an employee of U.S. Bank as a Client Relationship Consultant at the Hudson, Wisconsin branch since March 2022. Throughout her employment, Smith has been a dedicated employee, with no documented performance issues or history of employment discipline.

### Smith Reports a Sexual Relationship Between Her Coworkers

4. A few weeks into her employment, Smith learned that Client Relationship Consultant Elizabeth Nygaard was engaged in an on-going extramarital affair with Client Relationship Consultant Jared Komarek, and Smith understood the affair was affecting day-to-day operations of the bank and distracting employees. Smith further learned that the two would disappear in the bank's vault together during work hours, kissed, went on dates, and routinely called out of the office "sick" at nearly the same time on the same days, presumably to have romantic relations. Smith understood that U.S. Bank's policy required employees to disclose close personal relationships with co-workers and she believed that this had not been reported. Accordingly, she told Manager Matthew Scholtz that she believed Nygaard and Komarek were romantically involved.

5. In response, Scholtz did not seem to care, and he allowed the relationship to continue for several months. Upon information and belief, Nygaard was informed by Scholtz or someone else at U.S. Bank that Smith had reported her extramarital affair to the bank.

6. In May 2022, not long after Smith reported the relationship to Scholtz, Nygaard began ignoring Smith, refusing to answer her requests for assistance, and began making demeaning comments about Smith to Smith and others. This made going to work incredibly stressful for Smith, especially on days when her other co-workers were busy and she had to rely on Nygaard for assistance.

7. Smith subsequently reported Nygaard's retaliatory behavior to Scholtz. When Smith reported this conduct to Scholtz, Smith cried and was visibly upset. Nevertheless, Scholtz dismissed Smith's claims saying "she [Nygaard] is just going through personal stuff….Unless its disrupting workflow, don't take it personal." Smith objected and stated that this was in fact disrupting the workflow.

8. In early September 2022, Smith reported Nygaard's retaliatory conduct to U.S. Bank Human Resources ("HR"). Smith shared emails and screenshots of Microsoft Teams messages from Nygaard evidencing the retaliation. HR never contacted Smith to follow up on her report, never opened an investigation, and failed to take any action. Rather, Nygaard was allowed to continue retaliating against Smith for reporting her extramarital affair, which was a violation of bank policy, and its disruption to the branch's business operations.

9. Smith was forced to take pregnancy leave in early October, which was four weeks earlier than expected. Nygaard's conduct made going to work so stressful that Smith felt she needed to take leave earlier than she had planned in order to safeguard her own health and that of her baby. Upon her return to work in early February 2023, Smith learned that Komarek had ended the affair with Nygaard and that Nygaard had filed a harassment complaint against him with Defendant's Human Resources Department. Nygaard then transferred branches for a short period of time. Upon her return, Nygaard continued to ignore, demean, and refuse to help Smith.

10. On February 24, 2023, Smith emailed Scholtz to again report the retaliatory conduct she was experiencing from Nygaard. Following receipt of this email, Scholtz conducted a meeting with Smith where he suggested Smith transfer to another branch. Smith did not believe she should be forced to move locations due to Nygaard's retaliation.

### Smith is Subjected to Sexual Harassment

11. Upon information and belief, in late March 2023, and as discussed among Smith's coworkers, Noah Farnham was expelled from Hudson High school for allegedly trafficking drugs. A few days later, his father Dante Farnham came into the bank to withdraw large sums of money from a joint account he shared with his son.

12. On April 4, 2023, Noah Farnham and Dylan Henson approached Smith at the teller counter. Noah Farnham identified himself and Smith recognized his name because his father,

3

Dante Farnham, is a customer of the bank's wealth management group and Smith was aware of the allegations that Noah Farnham had been expelled from school for dealing drugs. Noah Farnham told Smith that he wanted to open a new account with Henson named as the beneficiary rather than his father. Smith explained that she was not able to open an account for Noah Farnham herself as she was working the teller counter, but she helped him schedule an appointment with Nygaard to do so the next day. At the conclusion of their conversation, Noah Farnham and Henson grabbed one of Smith's business cards sitting on the teller counter and left the bank.

13. Later that same day, Noah Farnham and Henson repeatedly called the bank asking to speak with Smith. Smith was also approached by Scholtz and asked whether she had given Noah Farnham and Henson the phone number to her direct desk line. Smith explained that she had not, but the boys had taken her business card which contained the phone number to her direct line. Scholtz then told Smith that her desk phone had been "ringing off the hook" and stated that her "boyfriends were calling."

14. The following day, April 5, 2023, Noah Farnham and Henson returned to the bank to meet with Nygaard and open Noah Farnham's new account. Upon entering the bank, Noah Farnham and Henson approached Smith at the teller counter and stated that they were "eighteen years old" and "old enough" for Smith. Smith dismissed their sexually suggestive comments and directed them to Nygaard's office for their appointment.

15. Throughout the meeting with Nygaard, Smith could hear Noah Farnham and Henson laughing, talking, and mentioning her name. While this was occurring, Nygaard sent Microsoft Teams messages to branch employees explaining that Henson was asking if Smith was single and stating that he wanted Smith to know he was eighteen years old. Smith was troubled by these messages and was especially concerned by the fact that Nygaard seemed to be encouraging

4

these sexually harassing comments. Nygaard subsequently stated that she found their sexually charged comments about Smith "quite entertaining."

16. Following their meeting with Nygaard, Noah Farnham and Henson shouted to Smith that they would see her again soon. Nygaard then approached Smith at the teller counter and explained that Noah Farnham and Henson told her that they viewed Smith's Facebook profile and that they were "going to take care of [Smith's] husband and kids," which Smith understood to mean harm them physically. Nygaard also shared that they made other sexual comments about Smith, but Nygaard didn't put them in the Microsoft Teams group chat because they "would get flagged" by the bank's computer system, presumably because of their sexual content. Despite knowing their statements were sexually inappropriate and a violation of bank policy, Nygaard laughed while telling Smith that Noah Farnham and Henson stated they wanted to: "Netflix and chill" with her "in the middle," "tag team" her, and "Eiffel Tower" her. This was incredibly offensive and embarrassing for Smith because her coworkers could hear Nygaard making these comments at the teller counter. When Nygaard was questioned by another coworker as to why she chose to open a new account for Noah Farnham in light of their sexually harassing comments, Nygaard claimed she "found it entertaining" and "didn't see an issue with it."

17. On April 7, 2023, Smith discovered through coworkers that Noah Farnham and Henson had visited the bank after she left on April 6, and they were asking to see her again. Their sexual comments combined with their stalking of her at work made Smith incredibly uncomfortable and concerned for her safety both at home and at work. That same day, Client Relationship Consultant Taylor Eldred told Smith that Nygaard had been repeating to coworkers the sexual comments Noah Farnham and Henson had made about Smith on April 5, 2023. Eldredge was so disturbed by the comments – and Nygaard's enjoyment in repeating the sexual comments

5

to anyone who would listen – that he reported the conduct to District Manager Charles Hanley and Scholtz via email.

18. Later that day, Smith sent her own email to Hanley and Scholtz reporting that: (1) Noah Farnham and Henson were sexually harassing her, (2) Nygaard encouraged this behavior, and (3) U.S. Bank had failed to take action to stop the behavior from continuing.

19. Smith went on family bonding leave from April 10 through April 30, 2023. On April 10, Smith received a call from Scholtz in which he informed her that someone from HR would be reaching out soon to discuss her report from April 7.

20. Smith returned from her leave on May 1, 2023. She had still not received any communications from HR. That morning, she sent Scholtz a Microsoft Teams message asking for an update on her harassment report, but he could not provide one. Later that afternoon, Smith emailed Hanley also asking him to provide an update. Hanley was also unable to provide Smith with an update and stated that HR would contact her in the future. Unsatisfied with these responses, Smith called HR later that day and the representative she spoke with also told her that someone would contact her in the future regarding her report. Neither Scholtz, Hanley, nor the HR Representative could tell Smith when she should expect to hear from HR or begin the investigation of her harassment complaint.

21. On May 2, 2023, Smith attended a regularly scheduled meeting with Scholtz, again asking about the status of her April 7 report, and letting Scholtz know Nygaard was still ignoring her requests for assistance and refusing to help her. Scholtz informed Smith that HR did not consider her report urgent, and HR planned to address other reports made prior to Smith's before getting to hers.

22. As a result of U.S. Bank's failure to take any remedial action, Noah Farnham and Henson returned to the bank with several friends on May 5, 2023, and made further sexually suggestive and offensive comments to Smith. One of the men from the group indicated that they were interested in opening an account, so Smith sent them to Nygaard. Again, Nygaard encouraged their sexually harassing comments and conduct directed towards Smith. Following her interaction with Noah Farnham, Henson, and the others, Smith emailed Hanley to report the additional sexual harassment and reported that she no longer felt comfortable at work. Hanley was unable to provide an update on the status of her case and said HR would contact her next week.

23. On May 12, 2023 – over a month after her initial report of sexual harassment – Smith finally received an email from HR to schedule a meeting to discuss her reports. On May 17, 2023, Smith received a call from Lead Human Resources Advisor Rene Shepherd to discuss her reports. Rather than conduct an interview and investigation, Shepherd stated that U.S. Bank did not consider Smith's report to be an urgent matter and claimed that U.S. Bank needed to investigate reports in the order that they are made unless they were threatening. Smith explained that this was in fact an urgent matter and the sex harassment she was experiencing was on-going. Smith also explained that she believed the only reason that U.S. Bank had not taken any action thus far was because of Noah Farnham's father's relationship with U.S. Bank's wealth management group. Shepherd had no response to this and then asked Smith what she wanted U.S. Bank to do in response to her report. Smith explained that she wanted the sexual harassment to stop and suggested that the bank close Noah Farnham's account. She also suggested that the bank terminate Nygaard's employment or move her to a different branch. Remarkably, Shepherd suggested that Smith should be the one to move to a different branch. Smith did not feel she should be forced to leave to resolve the harassment she was experiencing.

7

24. Later that day, Noah Farnham and Henson returned to the bank and asked to see Smith. However, Smith was out of the branch at that time.

25. To date, U.S. Bank has done nothing to resolve the sexual harassment which Smith first reported on April 7, 2023.

## CAUSES OF ACTION

### COUNT I:
### SEX DISCRIMINATION IN VIOLATION OF THE MHRA

26. By reference hereto, Plaintiff incorporates the paragraphs above.

27. The MHRA prohibits discrimination in employment on the basis of sex. Minn. Stat. § 363A.08, subd. 2. Discrimination based on sex includes sexual harassment. Minn. Stat. § 363A.03, subd. 13. Sexual harassment includes, but is not limited to, "unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when…that conduct or communication has the purpose or effect of substantially interfering with an individual's employment." Minn. Stat. § 363A.03, subd. 43.

28. As set forth above, U.S. Bank violated the MHRA by discriminating against Smith on the basis of sex.

29. As a result of the U.S. Bank's unlawful conduct, Smith has suffered, and will continue to suffer, damages, including but not necessarily limited to loss of income, mental anguish, emotional distress, loss of reputation, and other compensation damages in excess of $50,000.

### COUNT II:
### REPRISAL IN VIOLATION OF THE MHRA

30. By reference hereto, Plaintiff incorporates the paragraphs above.

31. The MHRA provides that it is an unfair discriminatory practice for any individual who participated in the discrimination as an employer, or as an employee or agent thereof, to intentionally engage in reprisal against any person who engages in protected conduct under the MHRA. Minn Stat. 363A.15.

32. By its conduct above, U.S Bank violated Minn Stat. 363A.15.

33. As a direct and proximate cause of U.S. Bank's unlawful conduct, Smith has suffered and will suffer damages, including but not necessarily limited to loss of past and future income, emotional distress, and other damages in an amount in excess of $50,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Celeste Smith prays for a judgment against Defendant U.S Bank providing the following relief:

A. For all damages available for Defendant's violations of the MHRA, including but not necessarily limited to three times Plaintiff's actual damages, including back pay, front pay, damages for emotional distress and mental suffering, and punitive damages;

B. For costs, disbursements, and attorneys' fees; and

C. For such other relief the court deems just and equitable.

Dated: July 3, 2023                                 **FABIAN MAY & ANDERSON, PLLP**

*/s/ Nicholas G. B. May*
Nicholas G. B. May, #0287106
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: (612) 353-3340
nmay@fmalawyers.com

ATTORNEY FOR PLAINTIFF
CELESTE SMITH

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. § 549.211, SUBD. 2

The undersigned hereby acknowledges that, pursuant to Minn. Stat. §549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: July 3, 2023                           /s/ Nicholas G. B. May
                                              Nicholas G. B. May, #0287106

| State of Minnesota | ) | **Affidavit of Service** |
|---|---|---|
| County of Hennepin | ) | |

I, Dominic Playle, state that on Wednesday, July 5, 2023 at 10:00 AM I served the Summons & Complaint upon U.S. Bank National Association, Inc., therein named, personally at 800 Nicollet Mall, Suite 2100, Minneapolis, MN, by handing to and leaving with Kaya Davis, Officer of said U.S. Bank National Association, Inc., a true and correct copy thereof.

I declare under penalty of perjury that everything I have stated in this document is true and correct.  Minnesota Statute § 358.116.

Dated: 7/5/2023  _____
Dominic Playle, Process Server


2609638 - 1


Metro Legal
legal support specialists since 1969

616 South 3rd Street
Minneapolis, MN 55415-1104
(800) 488-8994
www.metrolegal.com

RE: Celeste Smith

-1-

| State of Minnesota | District Court | |
|---|---|---|
| County of Hennepin | Judicial District: | Fourth |
| | Court File Number: | |
| | Case Type: | Employment |

Celeste Smith,

Plaintiff,

vs

U.S. Bank National Association, Inc.,

Defendant.

Date Case Filed: 7/07/2023

**Civil Cover Sheet
(Non-Family Case Type)**
Minn. R. Gen. Prac. 104

This civil cover sheet must be filed by the initial filing lawyer or party, if unrepresented by legal counsel, unless the court orders all parties or their legal counsel to complete this form. Once the initial civil cover sheet is filed, opposing lawyers or unrepresented parties who have not already been ordered to complete this form may submit their own cover sheet within ten days after being served with the initial cover sheet. See Rule 104 of the General Rules of Practice for the District Courts.

**If information is not known to the filing party at the time of filing, it shall be provided to the Court Administrator in writing by the filing party within seven (7) days of learning the information.** Any party impleading additional parties shall provide the same information to the Court Administrator. The Court Administrator shall, upon receipt of the completed certificate, notify all parties or their lawyers, if represented by counsel, of the date of filing the action and the file number assigned.

ATTORNEY FOR PLAINTIFF                    ATTORNEY FOR DEFENDANT

Nicholas G. B. May
Attorney Name                              Attorney Name

1625 Medical Arts Building
825 Nicollet Mall
Postal Address                             Postal Address

Minneapolis         MN        55402

| City | State | Zip Code | City | State | Zip Code |

(612) 353-3340
Telephone Number                                           Telephone Number

nmay@fmalawyers.com
E-mail address                                             E-mail address

#0287106
Minnesota Attorney License No.                             Minnesota Attorney License No.

PLAINTIFF, Self-represented                                DEFENDANT, Self-represented

_____                                _____
Name                                                        Name

_____                                _____
Postal Address                                              Postal Address

| City | State | Zip Code | City | State | Zip Code |

(      )                                                   (      )
Telephone Number                                           Telephone Number

_____                                _____
E-mail address                                              E-mail address

(Attach addition sheet for additional attorneys / parties)

Note: If either Plaintiff or Defendant gets an attorney, the attorney's name, address, telephone number and attorney ID number must be given in writing to the Court Administrator immediately.

1. Provide a concise statement of the case including facts and legal basis:

Plaintiff Celeste Smith alleges Defendant U.S. Bank National Association, Inc., discriminated against her based on her sex in violation of the Minnesota Human Rights Act ("MHRA"). Plaintiff also alleges Defendant engaged in reprisal in violation of MHRA.

2. Date Complaint was served:  7/05/2023

3. For Expedited Litigation Track (ELT) Pilot Courts only:

a. ☐ the parties jointly and voluntarily agree that this case shall be governed by the Special Rules for ELT Pilot. Date of agreement: _____

b. ☐ The court is requested to consider excluding this case from ELT for the following reasons: _____

Note: ELT is mandatory in certain cases, and where mandatory, exclusion may also be sought by timely motion under the Special Rules for ELT Pilot.

c. Anticipated number of trial witnesses: _____
d. Amount of medical expenses to date: _____
e. Amount of lost wages to date: _____
f. Identify any known subrogation interests: _____

4. Estimated discovery completion within <u>8</u> months from the date of this form.

5. Disclosure / discovery of electronically stored information discussed with other party?

   X No ☐ Yes, date of discussion: _____

   If Yes, list agreements, plans, and disputes: _____

6. Proposed trial start date: <u>7/15/2024</u>

7. Estimated trial time: <u>4-5 days</u> (estimates less than a day must be stated in hours).

8. Jury trial is:

   ☐ waived by consent of _____ pursuant to Minn. R. Civ. P. 38.02.

   X requested by <u>Plaintiff</u> (NOTE: Applicable fee must be enclosed)

9. Physical/mental/blood examination pursuant to Minn. R. Civ. P. 35 is requested:

   ☐ Yes X No

10. Identify any party or witness who will require interpreter services, and describe the services needed (specifying language, and if known, particular dialect): <u>None known.</u>

11. Issues in dispute: <u>Damages</u>

12. Case Type / Category: <u>Employment</u> (NOTE: select case type from Form 23, Subject Matter Index for Civil Cases, appended to the Minnesota Rules of Civil Procedure).

13.    Recommended Alternative Dispute Resolution (ADR) mechanism: <u>Mediation.</u>

(See list of ADR processes set forth in Minn. Gen. R. Prac. 114.02(a))

Recommended ADR provider (known as a "neutral"): <u>Thomas Fraser</u>

Recommended ADR completion date: 0<u>1/01/2024</u>

If applicable, reasons why ADR not appropriate for this case: _____

_____

By signing below, the attorney or party submitting this form certifies that the above information is true and correct.

Submitted by: <u>Nicholas G. B. May</u>

Attorney License: <u>0287106</u>

Firm: <u>Fabian May & Anderson, PLLP</u>

Address: <u>1625 Medical Arts Building, 825 Nicollet Mall, Minneapolis, MN 55402</u>

Telephone: <u>612-353-3344</u>

Date: <u>7/07/2023</u>